UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-60390-CIV-COHN/Snow

FRANKLYN WEICHSELBAUM,

        Plaintiff,

    vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on the plaintiff's complaint seeking judicial review of a final decision of the Social Security Administration denying the plaintiff's application for disability benefits. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, et. seq., and was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

### I. PROCEDURAL HISTORY

The plaintiff filed an application for disability benefits on July 13, 2005, alleging disability since February 1, 2002, as a result of dystonia, neck pain, high blood pressure and ankle problems. The alleged disability onset date later was amended to March 10, 2004. The application was denied initially and upon reconsideration. The plaintiff then requested a hearing

which was held before Administrative Law Judge Robert B. Rae on July 18, 2006. The Administrative Law Judge found that the plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied the plaintiff's request for review on January 25, 2007. The plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

II. FACTS

The plaintiff was born in 1945 and has a college education. His past relevant work was as a certified public accountant (CPA). The plaintiff had not worked since February 1, 2002.

The plaintiff began treatment for pain and involuntary movements with Roy Katzin, M.D., a neurologist, on February 11, 2000. The plaintiff told Dr. Katzin that he had injured his neck many years prior during a skiing accident, and had suffered occasional neck pain since then. A review of an MRI of the plaintiff's cervical spine revealed evidence of degenerative bony and disc disease, with disc herniations at C4-5, C5-6 and C6-7, with an extruded fragment at C6-7. (R:102)

The plaintiff reported that he had lost more than 40 pounds within the preceding few weeks and had experienced a recurrence of neck pain radiating into the right shoulder. The plaintiff also complained of involuntary facial movements, which

had begun several years earlier. The movements were not painful, but the plaintiff was concerned that they might be unsightly. Id.

Neurological examination revealed trace weakness of the right deltoid, but otherwise 5/5 power throughout, with no evidence of atrophy or fasciculations. The plaintiff did have obviously diminished right biceps brachii and brachioradialis reflexes as compared to elsewhere, but without fasciculations or long-tract signs. The plaintiff also had frequent tic-like movements or twitching of the face. Dr. Katzin's diagnostic impression was right cervical radiculopathy, focal dystonia, hypertension and hyperlipidemia. He prescribed Vioxx for the neck pain, and stated that neither surgery nor physical therapy were needed. No treatment was prescribed for the focal dystonia. (R:103)

The plaintiff returned to Dr. Katzin two years later, in July 2002. The plaintiff told Dr. Katzin that he was experiencing worsening of his neck pain and facial tics during a stressful time involving the dissolution of his business partnership. The plaintiff also reported an increasing problem with hypertension and obstructive sleep apnea syndrome. However, the plaintiff's primary complaint was the facial movements. (R:101)

Examination revealed frequent tic-like or dystonic movements of the left side of the plaintiff's face, with obvious blepharospasm (closing of the eyelids) as well. Dr. Katzin again

3

diagnosed focal dystonia and prescribed Seroquel. The plaintiff
was to return in one or two months. Id.

The plaintiff visited Dr. Katzin again on October 3,
2002, reporting that he had stopped taking Seroquel after several
days because of its side effects. The plaintiff told Dr. Katzin
that the facial movements had become disabling because they were
embarrassing and also produced head and neck pain which made it
difficult for him to sit for prolonged periods. Dr. Katzin
prescribed a trial of Artane and physical/massage therapy. (R:100)

On December 20, 2002, the plaintiff told Dr. Katzin that
he had no overall benefit from Artane and had stopped taking it
after about one month. The plaintiff told the doctor that he was
continuing physical therapy for his cervical spine muscle spasm and
planned to start this for his left foot because of heel pain and
Achilles tendon inflammation. The plaintiff was also planning to
look into the possibility of Botox injections for the facial
movements. Dr. Katzin approved of the plaintiff's plan, and noted
that the frequency of the plaintiff's involuntary facial movements
had increased since his first visit in February 2000. (R:99)

On March 12, 2003, the plaintiff presented to Dean B.
Dorfman, D.P.M., complaining of heel pain. The plaintiff told Dr.
Dorfman that the pain worsened upon rising in the morning, and also
with prolonged activity. Dr. Dorfman noted localized pain of the

4

plantar medial aspect of the heel with direct palpation.   No palpable mass was noted bilaterally.  Dr. Dorfman diagnosed plantar fascitis and casting for orthotics was done.  On April 2, 2003, Dr. Dorfman gave shock treatment to both of the plaintiff's feet. (R:158, 163)

On August 27, 2003, the plaintiff returned to Dr. Katzin, reporting that he had decided against Botox injections as treatment for the focal dystonia.  Upon examination, Dr. Katzin observed frequent blepharospasm and recurrent jerking movements of the jaw, which sometimes caused arrested speech. There was occasional left head turning which appeared involuntary and some minor tenderness/soreness over the right cervical region.   Dr. Katzin prescribed Flexeril and massage, and instructed the plaintiff to return in six months or as needed. (R:98)

The plaintiff returned to Dr. Katzin on March 10, 2004. He reported that the Flexeril helped him sleep and was controlling some of his neck pain, but had not relieved the involuntary movements.   The plaintiff stated that he could no longer sit for more than ten or fifteen minutes at a computer screen before the pain became intolerable.   The plaintiff was to reconsider Botox injections, continue on Flexeril and return to Dr. Katzin in six months. (R:97)

5

On July 27, 2004, the plaintiff again presented to Dr. Dorfman, complaining of severe pain in his left heel on weight bearing and during ambulation, making it difficult to stand and walk. Dr. Dorfman's examination revealed +10/10 pain on palpation of the medial aspect of the left heel, with no evidence of systemic inflammatory disease, cellulitis or infection. Neurological examination was within normal limits, but gait examination revealed an antalgic limp, severe subtalar joint pronation of both feet, with collapse of the longitudinal arch. (R:155)

Dr. Dorfman diagnosed plantar fascitis, left foot. He administered an injection for pain, and instructed the plaintiff to begin stretching exercises, apply ice and to continue wearing orthotics. Dr. Dorfman told the plaintiff to contact him if his symptoms worsened. Id.

The plaintiff returned to Dr. Dorfman on November 4, 2004, reporting great difficulty walking as the result of his heel pain, which had worsened. Based on his examination, Dr. Dorfman diagnosed plantar fascitis, inferior calcancal bursitis and retrocalcancal exotosis of the left foot, as well as tendinitis in the Achilles tendon. The doctor performed an orthotic adjustment and instructed the plaintiff to consider conservative treatment, consisting of stretching exercises and ice application. (R:154)

Also on November 4, 2004, the plaintiff presented to Dr. Katzin with the same complaints of involuntary facial movements and neck pain. He told the doctor that he had found Flexeril too sedating and preferred not to try Botox. Physical examination revealed that cervical range of motion was mildly limited in all directions. The plaintiff had no evidence of aphasia or dysarthria but continued to manifest sudden contractions of the lower face and platysma. He had no motor weakness, but did have mild decrease in the right brachilradialis and triceps reflexes. (R:96)

The plaintiff reported that he recently had seen an orthopedic surgeon about his cervical problems. No surgery or additional orthopedic care was recommended. Dr. Katzin recommended that the plaintiff continue regular exercise and massage therapy, and did not prescribe anything for the focal dystonia. He instructed the plaintiff to return as needed. Id.

In a letter dated January 24, 2005, Theodore L. Raptis, M.D., an internist, stated that the plaintiff currently was under his care. Dr. Raptis further stated that the plaintiff's dystonia, which had resulted in his disability, had not improved, and that the condition likely would persist for the foreseeable future. (R:105)

On March 24, 2005, the plaintiff was examined by Mark Goldstein, M.D., a neurologist. Dr. Goldstein noted frequent

7

orobuccal dyskinesias, without associated blepharospasm. He found no specific weakness of the plaintiff's arms or legs on direct muscle testing; gait, station and stance were normal. Sensory testing was symmetrical and intact to all primary modalities; reflexes were 2+ and symmetric and both toes were flexor. Dr. Goldstein observed some mild limitation of head and neck motion in all directions, but no palpable paracervical spasm or tenderness and no pain on palpation of the shoulder. (R:171)

Dr. Goldstein's diagnostic impression was cervical pain consistent with degenerative changes visible on the plaintiff's 1997 MRI scan. Dr. Goldstein did not believe there was any causal relationship between the cervical condition and the plaintiff's dystonia. The doctor did not recommend any further specific treatment for the plaintiff's cervical complaints unless the plaintiff decided he was miserable, at which time epidural injections or a spinal fusion could be considered. (R:172)

On October 12, 2005, a consultative physical examination of the plaintiff was performed by Roderick Santa Maria, an internist. Dr. Santa Maria noted that the plaintiff's cervical spine showed tight muscles and some straightening of the cervical lordosis. However, the plaintiff's neck maintained 30-degree flexion, 20-degree extension, right rotation 40 degrees, left rotation 30 degrees, right lateral movement 40 degrees and left

lateral movement 30 degrees.  The plaintiff's trapezius muscles also were tight.  His right should showed some decreased range of motion with frontal elevation 100 degrees and abduction 90 degrees. The rest of the range of motion was normal.  (R:109-10)

        The joints of both upper extremities showed normal and complete range of motion.  The plaintiff had normal hand grasp, fist and fine dexterity.  He was able to lift a small object off the table, open a doorknob, button a button and work a zipper with his hands.  The rest of the musculoskeletal exam showed normal and complete range of motion.  (R:110)

        Neurologically, the plaintiff was alert and oriented to person, place and time.  His mental status was intact and appropriate.  Cranial nerves, deep tendon reflexes and vibratory sensation were intact.  Id.

        Dr. Santa Maria concluded that the plaintiff had a form of dystonia which appeared to trigger spasming in his neck, accompanied by facial symptomatology, including tic.  He had some decreased range of motion in his neck.  The plaintiff reported that reading more than ten minutes or maintaining a neck position too long caused him to go into his spasm, and this was why he retired from his work.  Id.

        In February 2006, the plaintiff returned to Dr. Dorfman for continued treatment of plantar fascitis in the left foot.  He

saw Dr. Dorfman on four occasions between February 1, 2006, and May 24, 2006. Dr. Dorfman instructed the plaintiff to elevate his foot and continue wearing his orthotic. (R:150-53)

On June 23, 2006, Dr. Raptis completed a Medical Assessment of Ability To Do Work-Related Activities (Physical) form on behalf of the plaintiff. Dr. Raptis opined that the plaintiff's neck pains and decreased range of motion meant that he could lift/carry less than twenty pounds frequently, but that the plaintiff's abilities to stand, walk and sit were unaffected by his condition. The plaintiff could never climb, and only occasionally could balance, stoop, crouch, kneel or crawl. Dr. Raptis indicated that the plaintiff's ability to handle and feel were affected by his impairments, but did not answer the question pertaining to how these physical functions were affected. The doctor further indicated that the plaintiff had environmental restrictions involving heights, moving machinery and vibration, but again did not state how the plaintiff was affected. (R:164-66)

Dr. Raptis stated that the plaintiff's complaints were consistent with the doctor's objective findings and the diagnosis, and that the complaints were credible. In Dr. Raptis' opinion, the plaintiff would not be capable of performing light work on a sustained basis. He also opined that the plaintiff probably would not be capable of sedentary work because neck pain, fatigue of

10

lifting his neck as the day progressed, difficulty concentrating and headaches.  (R:167)

At the administrative hearing, the plaintiff testified that he still is able to drive, but develops an equilibrium problem after about twenty minutes.  The plaintiff stated that he last worked in 2002, and that he left his job because of severe headaches and an inability to concentrate at a computer for more than ten or fifteen minutes.  The plaintiff then would develop pain in his arm and leg, would experience spasms (dystonia) and his speech became slurred.  (R:180-82)

The plaintiff testified that on a typical day he hangs out in the house, and/or meets friends for a cup of coffee and conversation.  He does not do chores around the house.  The plaintiff lies down for an hour or so at about 3:00 each afternoon. He described having difficulty reaching in any direction. (R:183, 186, 189)

The plaintiff attributed his inability to concentrate to the spasms in his neck. He also explained that there was no treatment available for dystonia.  Botox was not a viable solution because approximately 150 shots would be required, and the effects would wear off.  No doctor ever had suggested surgery as an option. (R:184-86).

The plaintiff testified that he is unable to sit for more than ten or fifteen minutes and cannot stand very long because of problems with his heels. He takes prescription medication for high blood pressure and diabetes and over-the-counter medicine, such as Aleve, for pain. He is able to button his shirts and take care of himself. (R:187-90)

David Crystal, a vocational expert, testified that the plaintiff's past relevant work was as an accountant, which is classified as a skilled occupation at the sedentary exertional level. In this job, the plaintiff had acquired skills, such as record keeping, data entry, report preparation, use of various types of office equipment and customer service, which could be utilized in other jobs. (R:194)

The ALJ then presented the following hypothetical claimant to Mr. Crystal: a 59 year old individual, able to lift 20 pounds occasionally and 10 pounds frequently, who can stand/walk or sit for six hours at a time during an eight hour work day, but who cannot climb stairs, ramps, ladders or scaffolds, and who has some limitations in handling and feeling, with environmental restrictions relating to machinery, heights and vibration. Mr. Crystal stated that as long as such a person's ability to handle and feel was at least occasional, that person would be able to

12

perform his past relevant work as an accountant.[1]    However, if such a person could never handle or feel, he would not be able to perform his past relevant work and his transferable skills would not qualify him for any other available jobs. (R:195-97)

The ALJ next asked Mr. Crystal to presume that the same individual was capable of the exertional demands of sedentary work. Mr. Crystal stated that his answer would be the same: the person could return to his past relevant work as an accountant as long as he could occasionally handle and feel, but could not do so if he never could handle or feel.  Finally, Mr. Crystal opined that if the plaintiff were deemed to be fully credible, there was no job that he could perform. (R:198-99)

In response to questions posed by counsel for the plaintiff, Mr. Crystal stated that the plaintiff could not perform his past relevant work as an accountant if he were unable to talk frequently. However, this limitation would not prevent him from working as a bookkeeper. Mr. Crystal also testified if the plaintiff were unable to sit, stand or walk in combination for more

---

[1] Mr. Crystal explained that, for purposes of the Social Security Act, physical capabilities are expressed in terms of the following frequencies: continuous, frequent, occasional and never.  Therefore, if an individual's limitation on handling and feeling is less than occasional, it would mean that the person could never handle or feel.

than six hours in an eight hour day, he would be unable to perform his past relevant work. (R:200-02)

III. DECISION OF THE ALJ

The ALJ first found that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2005; that he had not engaged in substantial gainful activity since his alleged disability onset date of February 1, 2002, and that he suffered from severe impairments: focal dystonia, degenerative disc disease of the cervical spine, hypertension and diabetes mellitus Type II. However, the ALJ also found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:19)

Next, the ALJ found that the plaintiff retained the residual functional capacity to lift less than 20 pounds occasionally and 10 pounds frequently; stand/walk or sit for about six hours in an eight-hour workday; never climb ramps, stairs, ladders, ropes or scaffold; occasionally perform all other postural activities, with limited handling and gross manipulation on the right, and no concentrated to exposure to hazards such as heights or machinery and vibration. In making this finding, the ALJ considered and adopted the opinion of the plaintiff's treating physician, Dr. Raptis, but did not adopt Dr. Raptis' conclusion

that the plaintiff could not perform light work and possibly could not perform sedentary work. The ALJ pointed out that, under the Social Security Act, these conclusions are outside the doctor's expertise and are reserved to the Commissioner. (R:20)

In making his residual functional capacity determination, the ALJ found that the plaintiff's testimony regarding the intensity, persistence and limiting effects of his symptoms was not entirely credible. The ALJ noted that the plaintiff had suffered from focal dystonia for years prior to his alleged disability onset date, and that this condition had not prevented the plaintiff from working. Additionally, the plaintiff's hypertension and diabetes mellitus were under control. The ALJ concluded that the medical record, as well as the report of the independent consultative examiner, supported Dr. Raptis' assessment of the plaintiff's capabilities and limitations. Accordingly, the ALJ gave that assessment controlling weight. (R:21)

The ALJ then found, based on the testimony of the vocational expert, that the plaintiff was capable of performing his past relevant work as a certified public accountant, and that this work does not require the performance of work-related activities precluded by the plaintiff's residual functional capacity. Accordingly, the ALJ ruled that the plaintiff has not been under a

15

disability, as defined by the Social Security Act, from February 1, 2002, through the date of the ALJ's decision.

IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff seeks reversal or remand on the ground that the ALJ's determination that the plaintiff retained the residual functional capacity to perform his past relevant work was not based on substantial evidence. Specifically, the plaintiff contends that the vocational expert, when given a correct hypothetical (that the plaintiff had a greater than occasional limitation on his ability to handle and feel), testified that the plaintiff could not perform his past relevant work.

The Commissioner argues that the ALJ's decision should be affirmed because it was supported by substantial evidence and the correct legal standards were applied.

V. RECOMMENDATIONS OF LAW

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971);

16

Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).  The Court must review the record as a whole to determine if the decision is supported by substantial evidence.  Bloodsworth, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards.  No presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied.  Richardson, supra.

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 CFR § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began.  Second the claimant must provide evidence of a severe impairment.  Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four.  In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work.  The claimant has the burden of proving the inability to perform past relevant work. If the claimant's evidence shows an inability to perform past relevant work, the burden shifts to the ALJ in step five.  The ALJ must show that there is other gainful work in the national economy which the claimant can perform.  Once the ALJ identifies such work, the

17

burden returns to the claimant to prove his or her inability to perform such work.

The plaintiff contends that his treating physician, Dr. Raptis, opined that the plaintiff was limited to less than occasional handling and feeling, and that Dr. Raptis' opinion must be given controlling weight. The plaintiff goes on to point out that when the vocational expert, Mr. Crystal, considered a hypothetical individual who had a greater limitation than "occasional" with regard to handling a feeling, he stated that such a person could not perform the work of an accountant.

The testimony of a treating physician must be given considerable weight unless "good cause" is shown to the contrary, and failure of the ALJ to clearly articulate the reasons for giving lesser weight to the opinion of a treating physician constitutes reversible error. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); 20 C.F.R. §§ 404.157(d)(2), 416.927(d)(2)(1999). In the instant case, Dr. Raptis indicated that the plaintiff's ability to handle and feel were affected by his impairments, but did not answer the question pertaining to how these physical functions were affected. Notably, Dr. Raptis did not state that the plaintiff had no ability to handle or feel.

Mr. Crystal explained that, based on the terminology of the Social Security Act, the categories for physical abilities are: continuous, frequent, occasional and never. Thus, a person whose limitation in handling and feeling is greater than the "occasional" category would be never able handle or feel. It was on this basis that Mr. Crystal testified that a person with a greater than "occasional" limitation in this area would not be able to work as a certified public accountant.

The undersigned finds that Dr. Raptis' opinion that the plaintiff's impairments affected his ability to handle and feel was not tantamount to a statement that the plaintiff was unable to handle or feel. The plaintiff did not testify that he lacked these abilities. Additionally, the consultative examiner, Dr. Santa Maria, reported that the plaintiff had normal hand grasp, fist and fine dexterity, and was able to lift a small object off the table, open a doorknob, button a button and work a zipper with his hands.

Accordingly, the undersigned finds that the ALJ did not pose an incorrect hypothetical to the vocational expert, and the plaintiff's argument on this point is not supported by the record. The ALJ correctly interpreted Dr. Raptis' assessment of the plaintiff's ability to perform work and accorded it controlling weight. The plaintiff has failed to provide any basis for overturning the decision of the ALJ.

19

Although the plaintiff clearly suffers from serious impairments, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996); Foote v. Chater, 67 F.3d 1050, 1053 (11th Cir. 1995). Since the ALJ's decision was based on substantial evidence and the correct legal standards were applied, the decision should not be disturbed.

### VI. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the plaintiff's Motion for Summary Judgment be DENIED, and the Commissioner's Motion for Summary Judgment be GRANTED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847

F.2d 745 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 958 (1988); <u>RTC</u>

<u>v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this *12th*

day of September, 2007.


LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE


Copies to:

Lilli W. Marder, Esq. (P)
AUSA David I. Mellinger (D)